AURORA, E. & C. RY. CO. v. ECONOMIC ENGINEERING & CONSTRUCTION CO.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1915.)

No. 2219.

PATENTS ☞328—VALIDITY AND INFRINGEMENT—PNEUMATIC CONVEYOR.
    The Bassler patent, No. 851,054, for a pneumatic conveyor, mainly for use in removing and cooling ashes from boilers, construed, and held not infringed.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Arthur L. Sanborn, Judge.

Suit in equity by the Economic Engineering & Construction Company against the Aurora, Elgin & Chicago Railway Company. Decree for complainant, and defendant appeals. Reversed.

For opinion below, see 216 Fed. 637.

Appellee filed its bill to restrain infringement of claims 1, 2, 3, 4, 5, 6, and 8 of patent No. 851,054,.for a pneumatic conveyor, issued April 23, 1907, to E. M. Bassler. The device of the patent, while claimed to be capabe of various uses, is mainly availed of for the removal and cooling of ashes from boilers. The defenses are invalidity and noninfringement. Claims 4, 5, 6, and 8 were sustained by the District Court, and injunctional relief accorded. The appeal involves only these four claims, which read as follows, viz.:

"4. In a conveyor, the combination of a conduit provided with an admission opening or openings, a receptacle into which said conduit discharges, said receptacle comprising an expansion chamber and being provided with an air-discharge opening, means to create a current of air through said conduit, means in said expansion chamber to interrupt the blast from said conduit, and means to discharge water across said blast substantially at the point at which it is interrupted.

───────────────────────────────────────────────
☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"5. In a conveyor, the combination of a conduit provided with an admission opening or openings, a receptacle into which said conduit discharges, said receptacle comprising an expansion chamber and being provided with an air-discharge opening, means to create a current of air through said conduit, a baffle in said expansion chamber against which the blast from said conduit is directed and means to discharge water along the face of said baffle and across the blast from said conduit.

"6. In a conveyor, the combination of a conduit provided with an admission opening or openings, a receptacle into which said conduit discharges, said receptacle comprising an expansion chamber and being provided with an air-discharge opening, means to create a current of air through said conduit, a baffle in said expansion chamber between said conduit and said air-discharge opening against which the blast from said conduit is directed and means to discharge water along the face of said baffle and across the blast from said conduit."

"8. In a conveyor, the combination of a conduit provided with an admission opening or openings, a receptacle into which said conduit discharges, said receptacle comprising an expansion chamber and being provided with an air-discharge opening, a fan or blower applied to said discharge opening, a baffle within said expansion chamber located between said conduit and air-discharge opening against which the blast from said conduit is directed and means to discharge water along the face of said baffle and across the blast from said conduit."

Fig. 1 of the drawings is here reproduced:

Fig.1

The conduit *1* has as many graded hopper-shaped openings as may be desired for the admission of ashes into it. Through this conduit the ashes are drawn by suction or other pneumatic propulsion into the upper part of tank *5*. This tank has its top portion divided through the center by a baffle *9*, against which the blast from the conduit is directed. The size of the tank is such that the face of the current of air, burdened with ashes, is rarified as it is discharged therein from conduit *1*, whereby the solid matter carried therein falls by gravity. Discharge opening *7* connects also with the top of tank *5*. This, together with baffle *9*, assists in arresting the force of the blast from the conduit, the baffle serving somewhat to retard the escape of the air through the opening. "My improved conveyer," says the patentee, "also comprises means for wetting the material delivered into the receptacle *5* from the conduit *1*. This is preferably accomplished by introducing jets or streams of water into the blast from said conduit; but my invention contemplates any suitable means for this purpose." Water pipe *10* extends across the top of baffle *9* on the side receiving the blast. Through openings or vents *11* therein water under pressure is discharged in jets "downwardly along the face of baffle *9* and across the blast from the conduit *1*." The water will serve to wash down the particles of ashes that may have lodged and extinguish any live coals. Velocity of current of air through the conduit can be regulated by "closing the gate or valve *16*." Ash discharge appliances from the tank are shown at *6, 12, 13, 14*, and *15*. These are not in question. *8* is a fan or blower used in creating a vacuum in tank *5*. This produces the suction in conduit *1*.

The drawing of the alleged infringing device is set out in the record as follows, viz.:

This conveyor was used by appellant at its power plant at Batavia, Iowa. It has the conduit passing from the ash pit to a tank, an outlet conduit of larger size than the inlet conduit, which leads from the top of the tank to a fan or blower whereby the air is withdrawn from the tank, whereby the ashes are drawn up into the tank, and proper discharge devices. Defendant introduces water under pressure to settle the dust and extinguish live coals at a point in the conduit thereof some 30 feet distant from the discharge end of the conduit or tank.' This end of the conduit is provided with what appellant calls a deflector projected beyond the end and directed into the line of the blast. This, appellant contends, serves to protect the walls of the tank from the injurious effect of the blast and ashes carried thereby. A dust collector is provided in the conduit, which, it is claimed, protects the fan from the projected ashes therethrough. The elbows of the conduit exposed to abrasion are made removable and of very durable material. The tank is provided with an automatic manhole, which lifts when the tank pressure grows excessive from gas generated by the hot ashes and water.

The assignments of error go to the decree of the court in sustaining claims 4, 5, 6, and 8, and in granting the injunction and accounting. No relief is asked as to claims 1, 2, and 3.

Thomas F. Sheridan and George L. Wilkinson, both of Chicago, Ill., for appellant.

Charles C. Bulkley and George E. Waldo, both of Chicago, Ill., for appellee.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). There was no novelty in driving the ashes through the conduit to the tank by means of pneumatic pressure, nor in the use of an expansion tank. What the patentee claimed was the forcible discharge of water under pressure into and across the blast substantially at the point at which it is interrupted by the baffle so that the water will flow downward along the face of the baffle. At that point the blast, consisting of the ash-laden column of air ejected from the conduit against the baffle, would necessarily be greatly agitated and diffused. The water applied at the point of contact between the blast and the baffle would necessarily intermingle with the ashes as spray and at the same time flow down the face of the baffle, serving, among other things, to prevent adhesion of ashes to the baffle. This idea in ash and other conveyors was new and possessed of merit.

Appellant contends that, by reason of the location of its application of water at a distance of 30 feet from the tank or expansion chamber, its device does not infringe the patent. The dust collector, movable elbow protectors, and automatic vent, in our opinion, are nothing more than improvements upon the main structure, if they amount to such. The so-called deflector is clearly the equivalent of baffle 9 of the patent. The mechanical arrangement of the two conveyors is practically the same, and the only substantial distinction between them is as to the place at which the water is delivered to the so-called blast. If appellee is confined to the apparent language of the patent, wherein it seems to be stated that the water must be applied to the blast after it leaves the conduit and near to the place of its impact upon baffle 9, then it would also seem true that appellant's device would not infringe; the underlying principle of the two being different.

To these propositions we apply ourselves. Bassler's theory was that

the ash must not be saturated with water while in the conduit, because of its tendency to clog and choke the pipe. He contends that appellant's device applies the water in accordance with his patent at right angles to the line of travel of the blast, at a point so near the tank 5 as to effect the passage of the water to the discharge end of the conduit and insure its delivery, practically, as free water against the baffle or deflector, and before the ashes become saturated; that the blast travels at the rate of two miles per minute; that the time between the application of the water to the blast and its delivery to the baffle is negligible, and that during that time the ashes will not be saturated. This method, he asserts, delivers the water to the baffle and blast at their point of contact. If this were so, it would be essential to maintain that the application of the water across and at right angles to the blast 30 feet away from the baffle is the equivalent of the application thereof called for by claim 4 of the patent, viz., "substantially at the point at which it is interrupted."

In the operation of the device of the patent, in order to secure extinguishment of live coals, a large amount of water is required, which, besides being expensive, has other disadvantages. For the alleged infringing device it is claimed that the mixing of air, water, and ash in the conduit facilitates saturation. It appears that there is a limit to the distance from the end of the conduit of the application of the water, that limit being approximately 30 feet, in traveling which distance there is small tendency to clog on the part of the ashes. No other reason is shown. It is not satisfactorily shown that the delivery of the water, though under pressure, at a point in the conduit 30 feet away from the outlet thereof, crosses the line of travel of the blast, traveling at the rate of 176 feet per second, or whether it is not seized by the blast at its periphery and hurried against the baffle. In the latter case it would not be projected across the line of travel of the blast.

The specification, in describing the patent provision for wetting the material delivered into the tanks, by introducing jets or streams of water "into the blast from said conduit," adds, "But my invention contemplates any suitable means for this purpose." Claims 5, 6, and 8 each call for the discharge of water along the face of the baffle and across the "blast from said conduit," while claim 4, as above stated, calls for "means to discharge water across said blast substantially at the point at which it is interrupted."

We can come to no other conclusion than that the patentee intended to limit his application of water to the blast after its discharge from the conduit. The patent is by no means a broad one, and has but a narrow range of equivalents. Its whole trend corroborates the claim of appellant that the blast from the conduit must be delivered into the expansion chamber or tank in a dry condition. To hold infringement would strain the obvious meaning of the language of the claims. It was evidently the concept of the patentee that the ashes should be attacked by water while in a diffused condition, rather than when rushing through the conduit. We are not impressed with the suggestion that the principle is the same in both cases. We hold that the

means for an attack upon the blast after it leaves the conduit is an essential element of appellee's combination. That element not being present in appellant's device, infringement is not made out.

The decree of the District Court is therefore reversed, with direction to dismiss the bill.